**PEASE LAW, APC**
Bryan W. Pease (SBN 239139)
Email: bryan@peaselaw.org
Parisa Ijadi-Maghsoodi (SBN 273847)
Email: parisa@peaselaw.org
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Ph. (619) 723-0369

Attorneys for Plaintiff Carley Crawford

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLEY CRAWFORD,<br><br>             Plaintiff,<br><br>v.<br><br>COUNTY OF ORANGE; ORANGE COUNTY ANIMAL CARE; ORANGE COUNTY ANIMAL CARE DIRECTOR ANDI BERNARD; and DOES 1-10,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff Carley Crawford is the owner of a trained service dog named Rambo. For the past four years, Rambo has served the vital role of alleviating Crawford's disability symptoms and allowed her to manage these symptoms. Rambo alleviated Crawford's symptoms by not only providing emotional support, but also by performing tasks, including laying on top of her if she is having a panic attack. Rambo's

role as Crawford's service dog also reduces the need for Crawford to rely on medication to treat the symptoms of her disability.

2.    Defendants have deprived Plaintiff of possession of her service dog and have refused to engage in the interactive process with Plaintiff to allow Plaintiff to regain possession of Rambo.

3.    Defendants have known since at least March 10, 2022 that there was no lawful basis for impounding Rambo. Continued seizure of Rambo after this point was unreasonable and a violation of Plaintiff's Fourth Amendment rights as well as Title II of the Americans With Disabilities Act of 1990 ("ADA").

4.    Defendants have lately resorted to pursuing Rambo out of state and continuing to attempt to unlawfully seize and destroy him. This has continued to deprive Plaintiff of the ability to reunite with Rambo out of fear that Defendants will locate and destroy him.

5.    Lake Forest Municipal Code (LFMC) § 10.04.010 specifically provides that an attack must be *unprovoked* in order to label a dog "vicious."

6.    On January 11, 2022, Defendants tentatively declared Crawford's service dog to be a "vicious dog" under LFMC § 10.04.010, claiming that Rambo attacked "without provocation" and "while unrestrained at a park." Both of these claims were false.

7.    On March 11, 2022, following an administrative hearing conducted by OCAC, a County hearing officer issued a decision finding that the attack was *provoked*—not unprovoked. During the hearing, Crawford, who was the only witness present at the incident, testified that her service dog was leashed at the time.

8.    Despite these clear factual findings, Defendants misapplied the LFMC and continued to declare Crawford's service dog to be "vicious" and requiring destruction, despite there being no provision in the LFMC for an unprovoked attack serving as the basis for a vicious dog declaration.

## JURISDICTION AND VENUE

9.    This action arises under 42 U.S.C. §§ 1983 and 12131, *et seq*. The Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343. The Court has jurisdiction to issue declaratory and/or injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Federal Rule of Civil Procedure 57.

10.    The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11.    Venue under 28 U.S.C. § 1391 in this Court is proper as a substantial part of the events or omissions giving rise to the claims alleged occurred in Orange County, which is within the Central District of California. Additionally, all parties reside in Orange County.

## PARTIES

12.    Plaintiff CARLEY CRAWFORD is an individual who at all relevant times mentioned in this complaint resided in Lake Forest, California, which is in Orange County.

13.    Defendant COUNTY OF ORANGE is a county in California and is a municipality for purposes of municipal liability under 42 U.S.C. § 1983.

14.    Defendant ORANGE COUNTY ANIMAL CARE is an agency of COUNTY OF ORANGE.

15.    Defendant ORANGE COUNTY ANIMAL CARE DIRECTOR ANDI BERNARD ("Bernard") is an individual residing in Orange County. Bernard is named in her individual and official capacities.

16.    Plaintiff is informed and believes and thereon alleges that each of the fictitiously named DOE Defendants is responsible in some manner for the acts, omissions, and damages alleged herein. Plaintiff is unaware of the true names and capacities of the DOE Defendants, and, therefore, sues these Defendants under such fictitious names. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named Defendants was the agent, servant and employee of each and every

other Defendant acting within the course and scope of his or her agency and
employment, and with the knowledge, ratification and consent of each respective
principal. Plaintiff will seek leave to amend this Complaint when their true names and
capacities have been ascertained.

17.    Regarding all actions and causes of action herein alleged and stated, all
Defendants (including all DOE defendants) violated clearly established statutory or
constitutional rights held by Plaintiff that they had a mandatory duty to uphold.  No
reasonable governmental official similarly situated to any of the Defendants could have
believed that his/her conduct was lawful or within the bounds of reasonable discretion.
As a result, all individual Defendants, including all individual DOE defendants, lack
immunity from suit or liability under either statutorily created immunity or the judicially
created doctrine of "qualified immunity".

## ALLEGATIONS OF FACT

18.    On December 17, 2021, Defendant OCAC impounded Rambo after Rambo
bit a child Crawford was supervising. Prior to the incident, Crawford took the child to a
park near her home with the consent of the child's mother. Crawford was pushing the
child on a swing while Rambo sat adjacent on a leash. Rambo kept pushing his ball
under the swing toward Crawford, and the child's legs hit Rambo on the head three
times while swinging. This caused Rambo to eventually bite. OCAC thereafter
impounded Rambo.

19.    Throughout December 2021, Crawford repeatedly informed OCAC that she
was a person with a disability, that her disability symptoms substantially limited her
major life activities, that her disability symptoms were worsening because of her
separation from her trained service dog, and that she was requesting a reasonable
accommodation to OCAC's policies and procedures. To protect her health and safety,
Crawford proposed an immediate return of her trained service dog on terms agreeable to
OCAC.

20.     OCAC did not engage in the interactive process with Crawford regarding her disability symptoms, the nexus, or an accommodation, such as home confinement given Crawford's ownership of a single-family residence with an already fully enclosed, gated, and walled off yard, and the lack of other individuals residing in Crawford's home. OCAC completely disregarded Crawford's repeated disclosures and requests.

21.     Between December 17, 2021 and December 28, 2021, OCAC failed to properly care for Rambo. As a result, Rambo lost 20 pounds (105 pounds to 85.5 pounds). On December 28, 2021, Rambo had to be transferred to Talega Animal Hospital to save him from death. Rambo was suffering from pancreatitis, throwing up blood, and had blood in his stool from neglect and starvation.

22.     From December 28, 2022 to April 21, 2022, Rambo was kept at Talega Veterinary Hospital, with the veterinarian under an agreement with OCAC not to release him, as an alternative to being impounded at OCAC.

23.     All staff at Talega Animal Hospital have said Rambo is one of the most well behaved and sociable dogs they have ever encountered, and he has never needed to be muzzled while at this facility. Crawford visited Rambo there every day.

24.     On February 14, 2022, Crawford's counsel sent a letter to Bernard and OCAC seeking reasonable accommodations for Crawford's disability. A true and correct copy of the letter is attached hereto as Exhibit 1.

25.     On February 15, 2022, Deputy County Counsel Carolyn Frost emailed a response to Plaintiff's counsel refusing to engage in the interactive process. A true and correct copy of this letter is attached hereto as Exhibit 2.

26.     On February 16, 2022, Petitioner's counsel emailed the following response:

Dear Ms. Frost:

Thank you for your February 15 letter laying out the County's position. However, a dog attacking after being hit in the head by a leg protruding from a bucket swing cannot be categorized as "without provocation." This unfortunate situation can easily be prevented from ever occurring again.

Ms. Crawford's service dog generally has a very mild disposition and is very well trained, as numerous trainers have attested to. By implementing standard measures such as being confined to Ms. Crawford's home and gated and walled off yard--where there are no children--and being muzzled whenever taken out, would prevent any possible future threat to public safety.

Please let me know if the County would be willing to agree to less severe measures than destruction, which I understand the County is seeking in this case despite this being the first incident involving this 6-year-old dog who has never had any prior incidents.

Additionally, I have just come into this case and need time for my own expert to evaluate Ms. Crawford's dog. I also have depositions currently scheduled all day on February 23. Please let me know if the County will agree to a continuance of the hearing. I would also be happy to discuss the case by phone if you are available. Thank you for your cooperation.

Sincerely,
Bryan Pease, Esq.

27.    Deputy County Counsel responded the same day stating, "Thank you for your e-mail communication. OC Animal Care has not changed its position with regard to the restrictions contained in the tentative declaration letter dated January 11, 2022. The purpose of the hearing is to allow you, on behalf of Ms. Crawford, to present evidence indicating that Rambo does not meet the definition of a vicious dog and to present evidence on alternative proposed safety restrictions."

28.    On March 10, 2022, Defendants held a dangerous dog hearing. Testimony taken, including from Crawford. Dr. Jill Goldman, a board-certified behaviorist of 30 years, who spent several hours reviewing the file, speaking with Crawford, and assessing Rambo in person, testified that the attack was provoked by the kicking from the swing and could have easily been prevented. Dog trainer Tommy Stark also gave the same opinion, after having evaluated Rambo and spoken with Crawford extensively.

29.     On March 14, 2022, Defendants issued a decision finding that Rambo had engaged in a *provoked* attack, yet still labeling Rambo "vicious" and requiring destruction. A true and correct copy of the decision is attached hereto as Exhibit 3.

30.     The conclusion of the decision was as follows:

> Accordingly, because of the extreme severity of the injuries I must conclude that Rambo is a "Vicious Dog" per the definition of Lake Forest Municipal Code Section 10.04.010.
>
> I must further conclude that because probability [sic] that **a similar provocation to Rambo would provoke a similar response** at some point in time, regardless of the efforts to permanently remove him physically from others, that Rambo be humanely euthanized for the protection, health, safety and welfare of others in our community.

(Emphasis added.)

31.     LFMC § 10.04.010 provides the following definition:

> "Vicious dog" means any of the following:
>
> 1.     Any dog seized as a "fighting animal" under Section 599aa of the Penal Code and upon the sustaining of a conviction of the owner or custodian of a fighting animal as set forth in subdivision (a) of Section 597.5 of the Penal Code.
>
> 2.     Any dog which, **when unprovoked**, in an aggressive manner, inflicts severe injury on or kills a human being, whether the person and the animal are on or off the property of the owner or custodian of the animal.
>
> 3.     Any animal previously determined to be and currently listed as a potentially dangerous dog, which, after its owner or keeper has been notified of this determination, continues the behavior of a "potentially dangerous dog" as set forth above, or is maintained in violation of the conditions and restrictions placed upon the dog as a "potentially dangerous dog."

COMPLAINT

32.    The County hearing officer sent his decision to OCAC on March 11, 2022, but OCAC did not adopt the decision and notify Petitioner until March 14, 2022.

33.    The factual findings of the decision can only be interpreted one way, which is that Crawford's service dog does not meet the definition of a "vicious dog" pursuant to LFMC § 10.04.010.

34.    By finding that "a similar provocation to Rambo would provoke a similar response," Defendants conceded that the attack was provoked. Accordingly, there is no definition under which Crawford's service dog can be labeled "vicious."

35.    Because Rambo has never been previously determined to be potentially dangerous, the only way he can be determined to be a "vicious dog" under LFMC § 10.04.010 is if the attack was *unprovoked.*

36.    Defendants have misapplied the LFMC and labeled Crawford's service dog "vicious" despite the definition not having been met.

37.    On April 21, 2022, Rambo was removed from Talega Animal Hospital. Since that time, OCAC has appeared multiple times at Crawford's home and the homes of relatives seeking to seize Rambo.

38.    On May 5, 2022, OCAC called Denver Animal Protection, the animal care and control agency for the City of Denver, where Crawford lived previously, and falsely claimed that Plaintiff "STOLE THE DOG FROM THE VET," and that Rambo "was removed against court order by owner," as well as "California court ordered dog destroyed." Plaintiff cannot have stolen her own property, and there was never any court order either for Rambo to stay at the vet or for Rambo to be destroyed. A true and correct copy of Denver Animal Protection's report on this call from OCAC is attached hereto as Exhibit 4.

39.    Plaintiff is entitled to damages for Defendants' refusal to engage in the interactive process with Plaintiff as well as Defendants' continued impoundment of Rambo after Defendants determined on March 14, 2022 that the attack was provoked, making the "vicious" dog label inapplicable.

40.    Plaintiff is also entitled to declaratory and injunctive relief to stop Defendants from searching for Rambo outside of their jurisdiction and attempting to seize and destroy him.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983

### (Against Bernard and Does 1-10)

41.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

42.    Title 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of [law] subjects, or causes to be subjected, any person of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law [or equity]."

43.    The Fourth Amendment protects against unlawful and unreasonable seizure of property and persons.

44.    The Fourteenth Amendment protects against deprivation of property without due process of law.

45.    Defendants Bernard and Does 1-10 acting in their individual capacities deprived Plaintiff of her Constitutional rights guaranteed to her by the Fourth and Fourteenth Amendments to the United States Constitution by improperly and unreasonably continuing to impound Rambo after there was no lawful basis for doing so.

46.    At no time did Plaintiff give consent to Defendants' actions.

47.    In committing the acts and omissions alleged herein, Defendants acted under the color of state law.

48.    In committing the acts and omissions alleged herein, Defendants acted with malice, oppression and fraud, and with the intent to cause harm and/or offense to Plaintiff.

49.    Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, and all applicable law, and any other such relief as the Court deems just and appropriate.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Municipal Liability

### (Against all Defendants)

50.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

51.    Defendants have an unconstitutional policy of ignoring the definitions provided in the LFMC for when a dog can be labeled "vicious," and instead applying their own contrary criteria and labeling dogs such as Rambo "vicious" based such contrary criteria when an incident occurs in Lake Forest.

52.    Defendants also have an unconstitutional policy of pursuing dogs such as Rambo outside of their jurisdiction and seeking to destroy such dogs in violation of the Fourth Amendment.

53.    Both policies are deeply engrained policies or customs followed by Defendants.

54.    Both policies were also implemented, approved, and/or ratified by a final decisionmaker, in this case Bernard, in her official capacity as director of OCAC.

55.    Defendants carried out their unconstitutional polices as described in this Complaint and thereby damaged Plaintiff in an amount to be determined at trial.

56.    Plaintiff is entitled to compensatory damages, attorney fees under 42 U.S.C. § 1988, and all applicable law, injunctive relief against future implementation of these policies, and any other such relief as the Court deems just and appropriate.

## THIRD CAUSE OF ACTION

### Declaratory Relief

### (Against all Defendants)

57.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

58.    There is an ongoing dispute and controversy over whether a dog can be labeled dangerous or vicious from an *unprovoked* bite in Lake Forest. Defendants contend that they can lawfully seize and destroy dogs in Lake Forest despite an attack being unprovoked.

59.    Defendants are intent on continuing to search for Rambo nationwide and seizing him for destruction. Plaintiff is entitled to declaratory relief that such action would violate Plaintiff's Fourth and Fourteenth Amendment rights.

60.    Unless such declaratory relief issues, Plaintiff will suffer irreparable harm, in that she will continue to be unable to reunite with her service dog out of fear that Defendants will locate, seize, and destroy him. Plaintiff would also suffer irreparable harm if the seizure and destruction occurs. Accordingly, Plaintiff is entitled to declaratory relief to prevent such harm from taking place.

## FOURTH CAUSE OF ACTION

### Violation of Americans With Disabilities Act

### (Against all Defendants)

61.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

62.    Plaintiff is a qualified individual with a disability under the ADA.

63.    Plaintiff was excluded from participation in, denied the benefits of Defendants' services, programs, or activities, and was otherwise discriminated against by Defendants when Defendants refused to engage in the interactive process with Plaintiff and when Defendant refused to allow Plaintiff to keep her trained service dog subject to reasonable restrictions.

64.     The exclusion, denial of benefits, or discrimination was by reason of Plaintiff's disability.

65.     Under the ADA, public entities must operate programs in such a way that they are "readily accessible to and usable by individuals with disabilities." 29 C.F.R. § 35.150.

66.     Through their acts and omissions described herein, Defendants violated and will continue to violate the ADA by unlawfully operating programs in such a way that they are not readily accessible to and usable by individuals with disabilities.

67.     On information or belief, Defendants regularly deny persons with service dogs the benefits of those service dogs without engaging in the interactive process, considering reasonable accommodations, and making reasonable accommodations, in violation of the ADA.

68.     Defendants disregarded Plaintiff's requests for an accommodation or modification to Defendants' policies and practices in a way that reasonably accommodates her disabilities, is a violation of the ADA.

69.     Defendants failed to engage in the interactive process with Plaintiff, which constituted discrimination on the basis of disability and a violation of the ADA.

70.     Defendants administered their programs and services in a manner that utilized criteria or methods of administration that discriminated on the basis of disability in violation of the ADA.

71.     Plaintiff is entitled to damages and injunctive relief allowing her to have custody of her trained service dog Rambo.

## FIFTH CAUSE OF ACTION

### Violation of California Government Code § 11135

### (Against all Defendants)

72.     Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

COMPLAINT

73.    Section 11135(a) of the California Government Code provides in relevant part: "No person in the State of California shall, on the basis of … disability, … be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

74.    Section 11135 of the California Government Code prohibits discrimination based on sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, and sexual orientation.

75.    On information or belief, at all times relevant to this action, Defendants received financial assistance from the State of California, including for their services and programs as described in Section 11135(a).  Defendants' animal services program constitutes "a program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

76.    Section 11135(b) of the Government Code incorporates the protections and prohibitions contained in the Americans with Disabilities Act and its implementing regulations.  Section 11135(b) states in relevant part:

> With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

COMPLAINT

77.    Through their acts and omissions described herein, Defendants violated and will continue to violate California Government Code § 11135 by unlawfully operating programs in such a way that they are not readily accessible to and usable by individuals with disabilities.

78.    Defendants regularly deny persons with service dogs the benefits of those service dogs without engaging in the interactive process, considering reasonable accommodations, and making reasonable accommodations, in violation of California Government Code § 11135.

79.    Defendants disregarded Plaintiff's requests for an accommodation or modification to Defendants' policies and practices in a way that reasonably accommodates her disabilities, is a violation California Government Code § 11135

80.    Defendants failed to engage in the interactive process with Plaintiff, which constituted discrimination on the basis of disability and a violation of California Government Code § 11135.

81.    Defendants administered its programs and services in a manner that utilized criteria or methods of administration that discriminated on the basis of disability in violation of California Government Code § 11135.

82.    Pursuant to California Government Code § 11139, Plaintiff has a private right of action to enforce California Government Code § 11135(b).

83.    Plaintiff is directly and beneficially interested in Defendants' compliance with all applicable provisions of the law and with all legal duties, as set forth herein.

84.    At all times relevant to this action, Defendants had the ability to comply with Gov. Code § 11135 and have failed to do so by denying Plaintiff the benefits of the definitions in Lake Forest Municipal Code for the reasons set forth above.

# SIXTH CAUSE OF ACTION

## Negligence - Cal. Civil Code § 1714

### (Against all Defendants)

85.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

86.    Defendants had a duty to not conduct themselves in the manner in which they did, including failing to provide adequate care and food to Plaintiffs service dog, causing irreparable harm to his health and to Plaintiff's health and safety.

87.    County of Orange and OCAC are liable for the acts and omissions of their employees under respondeat superior.

88.    Plaintiff was directly and proximately harmed by Defendants' acts and omissions as herein alleged.

# SEVENTH CAUSE OF ACTION

## All Writs Act - 28 U.S.C. § 1651

### (Against all Defendants)

89.    Plaintiff realleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

90.    The All Writs Act, 28 U.S.C. § 1651, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

91.    The Supreme Court "has recognized that the writ of mandamus 'has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Allied Chemical Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980).

92.    By utilizing a hearing officer to make factual findings and then adopting those findings but arriving at a legal conclusion that is contrary to law, Defendants exceeded the scope of their jurisdiction.

93.    Defendants have also exceeded the scope of their jurisdiction by attempting to locate and seize Rambo outside the County of Orange and outside the State of California.

94.    Plaintiff is beneficially interested in the issuance of a writ pursuant to 28 U.S.C. § 1651 confining Defendants to a lawful exercise of their prescribed jurisdiction, thereby preventing Defendants from continuing to consider Crawford's service dog "vicious" under the LFMC, and preventing Defendants from continuing to search for and attempting to seize Crawford's service dog outside of Orange County and/or outside of California.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)    For a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their principals, members, agents, officers, employees, representatives, co-conspirators, and all person acting in concert with them, from continuing to attempt to seize Plaintiff's service dog;

(2)    For general and special compensatory damages (including direct, indirect, and emotional damages), and punitive damages, in amounts to be determined by the trier of fact, against all Defendants;

(3)    For reasonable attorney's fees and costs and expenses of litigation, pursuant to United States Code §§ 1983-1988, Cal. Code of Civil Procedure § 1021.5, and any other relevant statutory or case law, against all Defendants.

(4)    For such other and further legal and equitable relief as the Court deems just and proper.


Dated: May 9, 2022                    By:    /s/ Bryan W. Pease
                                                    Bryan W. Pease
                                                    Attorney for Plaintiff

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to each and every legal cause of action against each and every Defendant.

Dated: May 9, 2022                By:    /s/ Bryan Pease
                                          Bryan W. Pease
                                          Attorney for Plaintiff

COMPLAINT

# Exhibit 1



February 14, 2022

Andi Bernard
Edwin Espino
OC Animal Care
1630 Victory Rd.
Tustin, CA 92782

VIA ELECTRONIC TRANSMITTAL

<u>Sent only via email to andi.bernard@occr.ocgov.com, edwin.espino@occr.ocgov.com, and operationsdesk@occr.ocgov.com, and fax to 714-259-1094</u>

**RE:    Carley Crawford**

Dear Ms. Bernard and Mr. Espino:

I am representing Carley Crawford in the matter of OCAC's impoundment of her dog and pending proceeding to declare her dog dangerous. I am writing to request a reasonable accommodation. Ms. Crawford seeks an immediate return of her trained service dog – under conditions agreeable to both parties – to accommodate her disability.

Public entities must ensure that any program or service they administer is accessible to people with disabilities. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (state animal quarantine policy would discriminate against visually impaired individuals who need guide dogs based on their disabilities); *Communities Actively Living Indep. & Free v. City of Los Angeles*, 2011 WL 4595993 at *14 (C.D. Cal. Feb. 10, 2011) (an emergency preparedness program failed to anticipate the special needs of individuals with disabilities, and individuals with disabilities were denied program benefits because local agencies failed to access their capacity to consider the need for reasonable accommodations, which disproportionately burdened them through its facially neutral practice of administering its program).

Public entities may be required to modify neutral policies if they bear more heavily on people with disabilities than on others, even if there are insufficient grounds for a disparate treatment claim. See *Crowder v. Kitagay*, 81 F.3d 1480, 1484-1485 (9th Cir. 1996); *Fry v. Saenz*, 98 Cal. App. 4th 256, 264 (2002). Reasonable accommodations essentially request an exception to a rule, policy, or practice. Public entities may not utilize standards or criteria or methods of administration that have a discriminatory effect or that perpetuate the discrimination.

OC Animal Care
February 14, 2022
Page 2 of 3

On multiple occasions in December 2021, Ms. Crawford informed your agency that she was a person with a disability, that her disability symptoms substantially limit her major life activities, that her disability symptoms were worsening because of her separation from her trained service dog, and that she was requesting an immediate return of her trained service dog on terms agreeable to your agency.

Rather than promptly engaging in the interactive process with Ms. Crawford regarding the nexus and an accommodation, such as home confinement given the lack of other individuals residing in her home, your agency completely disregarded Ms. Crawford's disclosures and request. Your agency's failure to engage in the interactive process required for reasonable accommodations violates state and federal disability laws.

It is our understanding that Ms. Crawford made this request with your agency again during the hearing held on December 23, 2021, but that request was also disregarded. **We have requested the audio from that hearing, but neither we nor Ms. Crawford have yet received it from your agency.**

Disregarding an individual's request for a reasonable accommodation is in stark contrast to the very intent of reasonable accommodation law, which is to consider each person's disabilities and need for accommodation on a case-by-case basis. In determining whether a reasonable accommodation is appropriate, state and federal courts recognize that these requests are highly fact specific and therefore should be analyzed on a case-by-case basis. Your agency's refusal to even consider Ms. Crawford's individual needs and circumstances is not only concerning, it violates state and federal disability laws.

Your agency had multiple opportunities to engage in the reasonable accommodation process, as required by law. Had your agency engaged in this process, Ms. Crawford would have had the opportunity to provide any necessary verifications or confirmations. **Ms. Crawford would have substantiated that her dog provides vital emotional support that alleviates her disability symptoms and is also trained to respond to her needs and perform tasks directly related to her disability – including assisting with her medication.** Your agency would have also had the opportunity to discuss reasonable terms, including factors that weigh in favor of home confinement constituting a reasonable accommodation. For example, Ms. Crawford would have been able to share information about her residence, including her ownership of a single-family home with an enclosed backyard. **Ms. Crawford would have also had the opportunity to share that only she currently resides in that residence and has the ability, and support, to keep her service dog contained on her premises at all times, which is surrounded by a 10-foot brick wall, *and* a locked fence that is over 6-feet tall.**

We write to request that your agency engage in the interactive process, as you are required to do by law. To facilitate this process, we are willing to provide any necessary verifications and discuss agreeable terms, such as Ms. Crawford keeping her service dog within a substantial enclosure or other type of control which your agency may deem necessary under the circumstances, posting and keeping posted upon her premises a warning notice pending the

OC Animal Care
February 14, 2022
Page 3 of 3

hearing, the form, content, and display of which specified by your agency. **As Ms. Crawford lives alone in a single-family residence with an already fully enclosed, gated, walled off yard, these conditions are reasonable.** In addition, these conditions – which are already provided in the Orange County Code pending an abatement hearing – will not cause your agency any undue financial or administrative burden. Furthermore, Ms. Crawford is willing to agree to other measures – that are also set forth in the Code – such as strictly confining her service dog to her property; agreeing to requirements as to size, construction, and design of her service dog's enclosure; agreeing to obtaining and maintaining liability insurance and furnishing a certificate or proof of insurance; and agreeing to requirements as to the type and method of restraints and/or muzzling of her service dog. Such terms are more than reasonable given the stage of the process, Ms. Crawford's ability to comply (as set forth above), and the fact that these terms are already set forth in the Code as specific reasonable restrictions and conditions.

In addition to Ms. Crawford's request being reasonable, her request is necessary. Ms. Crawford needs her trained service dog to maintain her health and safety. **Without this trained service dog, Ms. Crawford's disability symptoms will continue to worsen and her health will continue to deteriorate.**

Your agency's failure to engage in the interactive process with Ms. Crawford constitutes discrimination on the basis of disability. With deliberate indifference to Ms. Crawford's health and safety, your agency administered its services in a manner that utilized criteria or methods of administration that discriminated on the basis of disability. Your agency's violation of disability laws prevents and deters people with disabilities from having meaningful access to your publicly-funded services.

Despite your agency's failure to make any effort whatsoever to analyze, assess, or address Ms. Crawford's disability-based needs, we write to request that your agency engage in the interactive process. As time is of the essence given Ms. Crawford's health and safety, please respond to this request as soon as possible, no later than 5 p.m. on Tuesday, February 15, 2022.

Sincerely,

Bryan Pease, Esq.
Pease Law, APC
Attorneys for Carley Crawford

Exhibit 2



**OFFICE OF THE COUNTY COUNSEL**
**COUNTY OF ORANGE**

333 W. SANTA ANA BLVD., SUITE 407
SANTA ANA, CA 92701
MAILING ADDRESS: P.O. BOX 1379
SANTA ANA, CA 92702-1379
(714) 834-3300
FAX: (714) 834-2359

Carolyn S. Frost
Senior Deputy County Counsel
(714) 834-3300

E-Mail:
carolyn.frost@coco.ocgov.com

February 15, 2022

**<u>SENT VIA E-MAIL</u>**

Bryan Pease, Esq.
Pease Law, APC
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Email: bryan@peaselaw.org

      Re:    *Rambo (A1748068); Owner Carley Crawford*

Dear Mr. Pease:

      This letter serves as a response to your correspondence to Orange County Animal Care (OCAC) dated February 14, 2022, wherein you request immediate return of Rambo to Ms. Crawford as a reasonable accommodation under the Americans with Disabilities Act (ADA).

      Under the ADA, a service dog is a dog that is individually trained to perform tasks for people with disabilities. A dog does not qualify as a service dog if it simply provides comfort but does not perform a specific task. Dogs that provide emotional support, but do not perform a specific task, are therapy dogs. Although therapy dogs serve a valuable role for disabled people, they are not covered under the ADA.

      Even if Rambo is a service dog, such status would not prevent OCAC from carrying out its duties, nor would it immunize Rambo from coming under a vicious dog declaration or abatement measures to protect the public. While public entities are prohibited from discriminating against qualified individuals with a disability "on the basis of disability" (28 C.F.R. § 35.130), OCAC is enforcing the same statutes and ordinances with respect to Rambo and Ms. Crawford as OCAC does with respect to other individuals within their jurisdiction that have a dog that has bitten someone.

      A public entity is not required to accommodate a danger to the safety or health of the public pursuant to the ADA. Even if Rambo is considered a service animal under the ADA, service dogs must be under the handler's control at all times and the handler is required to take effective action to control the dog. 28 C.F.R. § 35.136(b)(1); *see also* U.S. Dept. of Justice, Civil Rights Division, Disability Rights Section "Frequently Asked Questions about Service Animals and the ADA" p.6, available at <u>https://www.ada.gov/regs2010/service_animal_qa.html</u>. Thus,

Bryan Pease
Pease Law, APC
February 15, 2022
Page 2

even though the ADA provides for accommodation of a service animal by a public entity, the ADA permits a dog that is not under its handler's control to be removed.

Federal regulations define "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices or procedures, or by the provision of auxiliary aids or services as provided." 28 C.F.R. § 35.139. Ms. Crawford's dog, Rambo, poses a "direct threat" to the public in that Rambo, while at a park, attacked a 3-year-old child that was in Ms. Crawford's care, without provocation. Rambo attacked the child while the child was seated within a bucket swing, causing multiple severe injuries. Rambo bit the child's legs inflicting a skin avulsion/degloving injury on the lower right leg which required multiple staples to repair, and two large avulsions to his lower left leg, requiring multiple staples to repair. A public entity need not accommodate a direct threat to the safety of the public and an accommodation request of releasing Rambo back to Ms. Crawford's care presents a direct threat to public safety.

The legislature, through Food & Agricultural Code Section 31601, has recognized that potentially dangerous and vicious dogs have become a serious and widespread threat to the safety and welfare of citizens of this state. In recent years, such dogs have assaulted without provocation and seriously injured numerous individuals, particularly children, and have killed numerous other dogs. Many of these attacks have occurred in public places. The number and severity of these attacks are attributable to the failure of owners to register, confine, and properly control vicious and potentially dangerous dogs. The necessity for the regulation and control of vicious and potentially dangerous dogs is a statewide problem, requiring statewide regulation, and existing laws are inadequate to deal with the threat to public health and safety posed by vicious and potentially dangerous dogs.

In 2015, the United States Department of Justice published a set of answers to frequently asked questions about service animals. Regarding whether a public entity can mandate vaccination requirements applicable to service dogs under the ADA, the Department of Justice answered, "Yes. **Individuals who have service animals are not exempt from local animal control or public health requirements**." U.S. Dept. of Justice, Civil Rights Division, Disability Rights Section "Frequently Asked Questions about Service Animals and the ADA," p.4, available at https://www.ada.gov/regs2010/service_animal_qa.html (emphasis added).

Bryan Pease
Pease Law, APC
February 15, 2022
Page 3


      OCAC is not declaring that Ms. Crawford cannot own a dog, nor that Ms. Crawford is prohibited from owning a service dog.  Rather, OCAC is declaring that Ms. Crawford may not continue to maintain this particular dog, as it presents a direct threat to the safety and health of others.  As such, and for the foregoing reasons, OCAC is declining your request for return of Rambo to Ms. Crawford as a reasonable accommodation under the ADA.


      Very truly yours,

      LEON J. PAGE
      COUNTY COUNSEL



      *Carolyn S. Frost*

By: _____

      Carolyn S. Frost, Deputy


CSF:vl

ec:    Andi Bernard, Director of OC Animal Care
      Dylan Wright, Director of OC Community Resources
      Cymantha Atkinson, Assistant Director OC Community Resources

Exhibit 3



# Community Resources

DYLAN WRIGHT
DIRECTOR
OC COMMUNITY RESOURCES

CYMANTHA ATKINSON
ASSISTANT DIRECTOR
OC COMMUNITY RESOURCES

JULIE LYONS
DIRECTOR
ADMINISTRATIVE SERVICES

ANDI BERNARD
DIRECTOR
OC ANIMAL CARE

JULIA BIDWELL
DIRECTOR
OC HOUSING & COMMUNITY
DEVELOPMENT

RENEE RAMIREZ
DIRECTOR
OC COMMUNITY SERVICES

STACY BLACKWOOD
DIRECTOR
OC PARKS

JULIE QUILLMAN
COUNTY LIBRARIAN
OC PUBLIC LIBRARIES

March 14, 2022

**FILE COPY**    **MAILED**

☒ STANDARD    ☒ CERTIFIED

DATE  3·14·22

NAME  ESPINO

Carley Crawford
34 Wild Rose Place
Lake Forest, CA 92630

C.C.    91 7199 9991 7031 6656 9106

B.P.    91 7199 9991 7031 6656 9250

Carley Crawford,

As provided in the declaration letter dated January 11, 2022, you were advised of your right to request a hearing. Having exercised your right, a hearing was held on Thursday, March 10, 2022 with Steven Knoblock serving as Hearing Officer.

The intent of the hearing was to afford you the opportunity to present evidence or show cause to rescind or alter the declaration as set forth in the declaration letter dated January 11, 2022.

Hearing Officer Steven Knoblock is upholding the declaration dated January 11, 2022.

Please see the attached Hearing Officer's notice of decision.

## PENAL CODE SECTION 399

(a) **If any person owning or having custody or control of a mischievous animal, knowing its propensities, willfully suffers it to go at large, or keeps it without ordinary care, and the animal, while so at large, or while not kept with ordinary care, kills any human being who has taken all the precautions that the circumstances permitted, or which a reasonable person would ordinarily take in the same situation, is guilty of a felony.**

(b) **If any person owning or having custody or control of a mischievous animal,  knowing its propensities, willfully suffers it to go at large, or keeps it without ordinary care, and the animal, while so at large, or while not kept with ordinary care, causes serious bodily injury to any human being who has taken all the precautions that the circumstances permitted, or which a reasonable person would ordinarily take in the same situation, is guilty of a misdemeanor or a felony.**



1630 VICTORY ROAD
TUSTIN, CA 92782
PHONE: 714.935.6848
FAX: 714 259-1094

NOTICE OF DETERMINATION
CARLEY CRAWFORD
MARCH 14, 2022

Pursuant to Food and Agricultural Codes 31621 and 31622, if you disagree with this decision, you may file an appeal in the limited civil division of the appropriate justice center branch of the Orange County Superior Court having jurisdiction over your location of residence (MD-140, Notice of Appeal, Menacing Dog). Information on this process can be obtained directly from the court by contacting them at (657) 622-6878.

You may also obtain this information in person at the Civil Department of the appropriate Orange County Superior Court branch. You will need to bring this Notice of Determination with you in order to file an appeal.

**You have five (5) calendar days from the receipt of this letter to file an appeal with the Orange County Superior Court.**

Prior to filing the appeal with the court, **a copy** of the appeal must be served upon the:

> Clerk of the Board of Supervisors, County of Orange
> Robert E. Thomas Hall of Administration Building
> 333 W. Santa Ana Blvd.
> 10 Civic Center Plaza, Room 465
> Santa Ana, California, 92702

**Again, the appeal must be filed with the Orange County Superior Court. It is not sufficient to simply serve a copy of the appeal on the Clerk of the Board of Supervisors. Both actions must be taken.**

**I acknowledge, as the owner of said animal, that I have received and understand the conditions imposed. I certify that I have read and understand the provisions of California Penal Code Section 399 included in this document.**

Please return the signed copy of this letter in the enclosed envelope and maintain a copy for your personal records.

_____        _____
Signature                                              Date
(Carley Crawford)


Operations Department
OC Animal Care

March 11, 2022

Andi Bernard, Director
OC Animal Care
1630 Victory Road
Tustin, CA 92782

Re: Post Declaration Hearing Determination for Carley Crawford, owner of "Rambo" (No.
A21-024369) Hearing date: March 10, 2022 @ 9AM

Dear OC Animal Care Director,

On March10, 2022 I served as Hearing Officer in the Post Declaration Hearing for Carley
Crawford, owner of "Rambo", an approximately 6 ½ year old, neutered male, black and
tan Rottweiler mix, Animal ID # A1748068, weighing approximately 105 lbs., tentatively
declared by Orange County Animal Care (OCAC) to be a Vicious Dog.

The hearing was conducted via teleconference because of the Covid 19 health safety
concerns. The call in number for the AT&T Teleconference was: (887) 873-8017… code
# 9469911. The hearing was conducted at 9am on the above referenced date with all
parties calling in and identifying themselves. In attendance were OCAC employees Sgt
Espino, Officer Hernandez, Carley Crawford, her attorneys Bryan Pease and Parisa
Idjadi- Maghsoodi. Also in attendance and testifying on Ms. Crawford's behalf was Dr. Jill
Goldman and Dr. Rachel Stanland, Madison Evans, Kelli Banzeniti. Attending from
County Counsel's office was Deputy County Counsels Carolyn Frost and James
Steinmann. After describing the protocol for the hearing, all witnesses referenced above,
identified themselves and were sworn in.

Sgt Espino then testified as follows:

On December 17, 2021 Carley Crawford walked to a local park with her dog "Rambo"
and her housekeeper's three-year-old son, JJ. She placed JJ in a bucket style swing (the
kind that surrounds the waist with legs through openings in the seat). JJ was swinging,
presumably after Crawford pushed him into motion, as he could not swing it himself. Per
a witness Tatlow, JJ's feet were passing by Rambo's face. Rambo, who was unleashed,
nipped at JJ's feet during the first pass of the swing and then on the third pass attacked
one of JJ's legs. Tatlow told the Vicious Dog investigator "it was vicious, aggressive. The
dog lunged five or six times." and "it was scary to me." She also told the investigator that
Crawford continued to hold onto her phone with one hand while trying to control Rambo
and pull his leash from her pocket, all while Rambo was actively attacking JJ. When
Crawford finally got the leash out and attempted to place it on Rambo, he became more
agitated and attacked JJ's legs again. Tatlow described that Rambo stopped the attack
once the leash was secured, Tatlow, who was inside of her car with her mother and child,
told investigator that she and her mother had a clear view of the attack and that "My mom
could see The dog's teeth from where we were."

JJ's legs were severely mauled resulting in the following injuries: right leg – a full-
thickness skin avulsion/degloving injury that was approximately 15 x 20 cm of skin
avulsed from the calf muscle, which required approximately 32 staples to reattach and
put the skin back together; left leg – two large avulsions that required approximately 22
staples to reattach and multiple punctures and scratches. This incident is consistent with
the definition of a Vicious Dog and set forth-in Lake Forest Municipal Code section
10.04.010. Due to the severity of injuries, the unrelenting attack by Rambo, and
Crawford's inability and/or unwillingness to control Rambo during the attack and in
general, the only appropriate abatement measure to protect the public and the children of
Orange County Animal Care jurisdiction, is destruction. Rambo was tentatively declared a
Vicious Dog with the only restriction being the humane euthanasia of Rambo.

Crawford's attorney Bryan Pease, Esq. requested that the Tatlow comments be
disregarded as hearsay and her Tatlow's mother's comments be disregarded as hearsay
on hearsay.

Carley Crawford testimony:

Carley Crawford testified that JJ's mother has been her housekeeper for around four
years and that JJ frequently accompanies his mother when she works at Crawford's
home.  JJ has had hundreds of interactions with Rambo and they often play together, roll
on the grass and jump off the couch frequently with Rambo nearby.  On the day of the
incident Rambo was on leash at Crawford's side while she was pushing JJ in the swing.
JJ was excitedly screaming and laughing while being pushed.  Rambo had a ball that he
liked to play with and placed the ball under the swing next to Crawford to encourage
Crawford to through the ball so Rambo could fetch it.  As JJ was swinging his legs kicked
Rambo in the head.  Crawford endeavored to move the ball and Rambo away from the
swing, but Rambo kept placing the ball under the swing next to Crawford.  On the second
swing JJ's feet and legs again made contact with Rambo's head, back and side.
Crawford testified that Rambo had previously had some undiagnosed pain issues on the
side of his body.  On the third swing JJ's legs and feet again hit Rambo and that is when
Rambo responded by biting JJ twice, once on each leg.

Crawford testified that the incident happened very fast.  The time between the first and
second bite was no more than one or two seconds and that the entire incident lasted
approximately 15 seconds.  She got Rambo to stop biting by giving him a verbal
command of either "off" or "out".  She simultaneously pulled on his leash, grabbed Rambo
and put him in a laying down position and placed her leg on top of Rambo's body.  She
immediately called JJ's mother.

Crawford further testified concerning Rambo's demeanor that he is often around other
adults and children and has never shown any signs aggression towards anyone, even
when he is pushed, punch or has his ears pulled.  She further testified that Rambo is an
emotional support animal and supports her as she suffers from PTSD.  She testified that

her doctor has had to put on new medications as a result of not having Rambo with her. She visits Rambo every day while he is being sheltered at the Talega Animal Hospital.

Dr. Stanland testified that she is a part-time Veterinarian at the Talega Vet Hospital. She met Rambo after the bite incident while he was being sheltered at the hospital and that she has never observed Rambo showing signs of aggression or bad behavior towards any person or other animals.

Madison Evans testified that he is a kennel attendant at the Talega Vet Hospital four days a week. He walks Rambo, often interacts with him and has never observed any display of aggression.

Crawford's sister, Kelli Banzanetti (sp) testified that she is vet technician and has interacted with Rambo on an almost daily basis and has never observed any aggressive behavior, even when her 4-year old son plays and ruff houses with him.

Tommy Stark, an experienced dog trainer and dog behaviorist, testified that he met Rambo three weeks prior to the hearing and has had the opportunity to spend time with and observe Rambo. He has observed no aggression, nervousness or fear in Rambo. He opined that Rambo's drive to play with the ball, coupled with the frustration of not being able to chase the ball and the agitation caused by the repeated kicking of Rambo was the provocation that caused the bites. He opined that the response of Rambo to this provocation was predictable.

Dr. Jill Goldman, a 30-year experience Animal Behaviorist testified that she first met Rambo a week before the hearing. She has worked with Rambo and placed him in a number of scenarios in order to judge his attitude and demeanor. She specifically placed him in a number of high energy and threatening situations. She observed no signs of aggression. She opined Rambo to be a very social and cautious dog. She further opinioned that the type of repeated and continued provocation Rambo encountered during the bite incident at the park could reasonably be expected to trigger a similar response in the future. The provocation could be avoided or mitigated by having Rambo avoid situations involving high stress, anxiety, frustration and agitation. She further opined that the need to distance Rambo in such situations is imperative. When questioned by Sgt Espino if Rambo's response was proportionate to the provocation Dr. Goldman stated the response was predictable but that the injuries exceeded the provocation.

In the administrative file and during this Administrative Hearing Attorney Pease raised issues concerning ADA reasonable accommodation issues relating to Crawford's control of and access to Rambo. The County Counsel's office has responded and communicated directly with Attorney Pease prior to this hearing asserting the non-applicability and non-relevancy of this issue to this Post Declaration Hearing. Accordingly, I will not be addressing or considering the ADA issue in any way in making my findings and determination in this matter.

Analysis:

It is undisputed that Rambo bit JJ at least twice on his legs causing very severe injuries.
Crawford and her witnesses contend that Rambo was justifiably provoked in the biting of
JJ.  The provocation was the loud screaming and laughing of JJ, the repeated and
continuous agitation of being kicked and hit in the head and body (coupled with Rambo's
prior pain) and the frustration and anxiety of not having the ball picked up and thrown.  It
is quite normal that well behaved dog, as Rambo is reputed to be, would remain calm
and under control during the types of provocation described above, especially when
being walked in a park, on lease, in the presence of and under the control its owner,

Rambo is reported to have a history of non-aggression while frequently interacting with
adults and children. This interaction includes with the corresponding noise, children
screaming laughing and even having Rambo pulled, punch and having his ears pulled.
For Rambo to be non-aggressive and docile during this type of regular human interaction
makes it even more astounding that he would inflict such aggressive and serve injuries
while, on lease, under the control of his owner and in the presence of a child whom
Rambo has playfully interacted with hundreds of times.  The type of aggression required
Crawford to not only yell a command, pull on the leash, but to then have to lay the dog
down and physically place her leg on top of Rambo to restrain him.

Expert testimony has opined that Rambo's aggressive reaction in response to the above-
indicated provocation is reasonable and predictable.  This being the case it is difficult to
imagine a scenario where Rambo, would for the rest of its natural life not be subject,
either intentionally or inadvertently, to similar types of provocation.  This type of
provocation would be subject to a similar (attack and bite) response per Dr. Goldman's
testimony.  Such a sudden, unexpected and severe response would place the health,
safety and welfare of people in great jeopardy.  I must also add, that in my approximately
8 years of acting as an Administrative Hearing Officer for the County of Orange, I have
never seen the severity of the type of injuries as those sustained by JJ.

Conclusion:

Accordingly, because of the extreme severity of the injuries I must conclude that Rambo
is a "Vicious Dog" per the definition of Lake Forest Municipal Code Section 10.04.010.

I must further conclude that because probability that a similar provocation to Rambo
would provoke a similar response at some point in time, regardless of the efforts to
permanently remove him physically from others, that Rambo be humanely euthanized for
the protection, health, safety and welfare of others in our community.

Steven Knoblock,
Administrative Hearing Officer

# OC Community Resources

January 11, 2022

**FILE COPY** **MAILED**

☒ STANDARD ☒ CERTIFIED

DATE 1.11.22

NAME ESPINO

C.C 7020 1290 0000 0971 3858
B.S 7020 1290 0000 0971 3865
M.R 7020 1290 0000 0971 3872

Carley Crawford
34 Wild Rose
Lake Forest, CA 92630

Ms. Crawford,

OC Animal Care takes very seriously our obligation and duty to investigate incidents that involve the possession and maintenance of Potentially Dangerous and Vicious Dogs. The decisions made by OC Animal Care on behalf of the citizens of Orange County must ensure the health, safety and welfare of the public and their pets.

On December 17, 2021, your dog, Rambo, while unrestrained at a park, attacked a three (3) year old child that was in your care, without provocation. Rambo attacked the child while the child was seated within a bucket swing, causing multiple severe injuries. Rambo bit the child first on one leg, then on the other, inflicting a skin avulsion/degloving injury on the lower right leg which required 28 staples to repair, and two (2) large avulsions to his lower left leg, requiring 11 staples to repair. This incident is consistent with the definition of a Vicious Dog as set forth in Lake Forest Municipal Code (LFMC) 10.04.010.

According to LFMC 10.04.010 Definitions and 10.20.020 Declaration and Possession of Vicious or Potentially Dangerous Dog, your dog, Rambo, a neutered male, approximately six (6) years old, black and tan, Rottweiler mix (A1748068) is tentatively declared a Vicious Dog.

Pursuant to LFMC 10.04.010, in order to protect and ensure the health, safety and welfare of the public and their pets, OC Animal Care requires that Rambo be humanely euthanized to protect the public from harm. Given Rambo's demonstrated aggressive propensities, the risk to public safety of allowing Rambo back into the community, where he could subsequently come into contact with children or adults and inflict injury, is high.

Until such time that this declaration is no longer tentative and considered permanent, pursuant to LFMC 10.04.010, OC Animal Care requires that Rambo be maintained at the Talega Animal Hospital (995 Avenida Pico, San Clemente CA 92673), or, at the OC Animal Care Shelter in order to abate the threat to public safety posed by Rambo. As such, Rambo is not permitted to leave the premises of the Talega Animal Hospital at *any* time, without the prior approval of OC Animal Care.



**DYLAN WRIGHT**
DIRECTOR
OC COMMUNITY RESOURCES

**CYMANTHA ATKINSON**
ASSISTANT DIRECTOR
OC COMMUNITY RESOURCES

**JULIE LYONS**
DIRECTOR
ADMINISTRATIVE SERVICES

**ANDI BERNARD**
DIRECTOR
OC ANIMAL CARE

**JULIA BIDWELL**
DIRECTOR
OC HOUSING & COMMUNITY DEVELOPMENT

**RENEE RAMIREZ**
DIRECTOR
OC COMMUNITY SERVICES

**STACY BLACKWOOD**
DIRECTOR
OC PARKS

**JULIE QUILLMAN**
COUNTY LIBRARIAN
OC PUBLIC LIBRARIES

**1630 VICTORY ROAD**
TUSTIN, CA 92782
PHONE: 714.935.6848
FAX: 714.259.1094

At such a time, when this declaration becomes permanent, and humane euthanasia is required, Rambo may be humanely euthanized at the Talega Animal Hospital, at OC Animal Care, or by any appropriately licensed facility or service within the County of Orange as chosen by you, his owner, and approved by OC Animal Care, within five (5) calendar days.

Pursuant to LFMC 10.04.010, you have five (5) working days after the receipt of this notice to request a hearing with the OC Animal Care Operations Department.

If you wish to schedule a hearing, please send your request to:

<div align="center">

OC Animal Care
Operations Department
1630 Victory Road
Tustin, CA 92782

</div>

Failure to request a hearing within five (5) working days after the receipt of this notice will result in the declaration, restrictions, conditions, and requirements therein, becoming final pursuant to LFMC 10.04.010. Once this declaration becomes permanent or final in any way, a Potentially Dangerous or Vicious Dog Declaration fee ($1,571) will be assessed.

All fees are currently based on the County of Orange Board of Supervisors Resolution 18-072, or another resolution applicable to your location of residence, and are subject to change with the passing of any subsequent resolution. OC Animal Care will advise of any future fee changes.

Any description of the dog with respect to breed is solely based on visual appearance. OC Animal Care makes neither a guarantee nor representation as to the true breed of Rambo nor any connection between the described breed and Rambo's temperament.

If you have any questions about this letter, you may contact OC Animal Care's Operations Department at (714) 796-6460. The Operations Department is open Monday through Friday, from 7:00 a.m. until 3:30 p.m.

Regards,

K. Moon
Lieutenant, Field Services
OC Animal Care

# Exhibit 4

**Activity Card**

---

**A22-372799-1**    **ASSIST/AGENCY**    Priority Level: **HIGH**    Total Animals:    Animal Type:

Activity Address:    2567 S BANNOCK ST
Activity Comment:    SEARCH FOR "RAMBO" ROTTWEILER MISSING FROM ORANGE COUNTY // DOG WAS DECLARED DAN

**Caller Information:**
P365928    ████████████████████

P365928

**Result Codes:**
1 UNF

Officer:    P202500    (F-5) HUMPHREYS-J    Clerk:    S2-0007119

Call Date:    05/05/22  09:30 AM
New Date:    05/05/22  09:30 AM
Dispatch Date:    05/05/22  10:30 AM
Working Date:    05/05/22  01:12 PM
Complete Date:    05/05/22  02:25 PM

Memo:

████████████████ CALLING FROM ORANGE COUNTY ANIMAL CONTROL WANTING TO TALK WITH ANIMAL CONTROL OFFICER REGARDING A DOG THAT BIT A 3YO THAT MIGHT BE HERE IN DENVER[Shared],Multi-Agency 911Ops Incident #: 911-22-0188715,124   DOG MIGHT BE AT 2567 S BANNOCK ST [Shared],124  &gt;&gt;&gt;&gt;&gt;&gt; CALLER NAME: ███████████████████ [Shared],124   DOG BIT A 3YO IN CALIFORNIA AND THERE WAS SEVERE INJURIES , OWNER OF THE DOG STOLE THE DOG FROM THE VET AND THE DOG IS NOW POSSIBLY HERE IN DENVER WITH HER OR EX HUSB [Shared],124  &gt;&gt;&gt;&gt;&gt;&gt; CALLER CONTACT - YES &lt;&lt;&lt;&lt;&lt;&lt; BY PHONE [Shared],124   CALL TAKING COMPLETE [Shared],[911Ops] has closed their incident [911-22-0188715],F1 - Spoke to ██████████ and he believes Rottweiler that bit and degloved 3 year old's legs was removed against court order by owner. California court ordered dog destroyed. ██████████████████████ Wants us to go over to Bannock St address to see if husband ███████████ is at property with the dog "Rambo". I will speak with CAO to see if dog can be impounded under 8-62 [Shared],F5 - 6 [Shared],F5 - Add DPD - staged at 2500 S Delaware St. [Shared],Multi-Agency Police Incident #: DPD-22-0224381,F5 - no dog on the property. Party Orange County is looking for sold this house in 2021. ██████████ has since moved to San Jose to play for the Sharks. [Shared],F1 - Ca

The following CRM values had to be truncated to fit into Chameleon:
 - lastname was truncated from '████████████████████"
05/05/22 17:36 On May 5th, 2022 at approxiamtely 1:12pm, I Denver Animal Protection Officer J. Humphreys #301 arrived at 2500 S Delaware St. Denver, CO 80223 to stage and wait for DPD. I was requested to respond with DPD to 2567 S Bannock St. by Lt. Rolfe after we received a call from ██████████ Orange County, California who was requesting that we search the property for a dangerous rottweiler that they were missing and believed could be at the address.

DPD Officer M. Martin #19091 arrived and we responded to the address. There we made contact with Ms. ████████████████ ███████████. She stated that she lived at the address with her boyfriend, ██████████████████████ ███████ bought the house from Mr. ██████████ in 2021. She also stated that there were no dogs on the property. ███████ stated that Mr. ███████ used to play for the Colorado Avalanch and was transferred to the San Jose Sharks so he moved to San Jose.

DPD had the following phone # for Mr. ███████████████████████.

This information was emailed Lt. Rolfe who advised that he would email Orange County. - j. humphreys

**Activity Card**

ll completed by F5. Emailed ██████████ our findings. [Shared]